**FILED**
JAMES J. VILT JR, CLERK
5/12/2026
U.S. DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

# UNITED STATES DISTRICT COURT

for the

Western District of Kentucky

_________Louisville_ Division

Daniel Feldman

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**-v-**

see attached Defendant List

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.)*

Case No. 3:26CV-347-JHM
*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)* ☑ Yes ☐ No

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
(Non-Prisoner Complaint)

**NOTICE**

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | | | |
|---|---|---|---|
| Name | Daniel Feldman | | |
| Address | 6009 W. Parker Rd. Ste 149 - 1055 | | |
| | Plano | TX | 75093 |
| | *City* | *State* | *Zip Code* |
| County | Collin | | |
| Telephone Number | (435) 612-0242 | | |
| E-Mail Address | danieljfeldmanphd@gmail.com | | |

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant No. 1

| | | | |
|---|---|---|---|
| Name | see attached for I. B. The Defendants | | |
| Job or Title *(if known)* | | | |
| Address | | | |
| | *City* | *State* | *Zip Code* |
| County | | | |
| Telephone Number | | | |
| E-Mail Address *(if known)* | | | |

☐ Individual capacity ☐ Official capacity

Defendant No. 2

| | | | |
|---|---|---|---|
| Name | | | |
| Job or Title *(if known)* | | | |
| Address | | | |
| | *City* | *State* | *Zip Code* |
| County | | | |
| Telephone Number | | | |
| E-Mail Address *(if known)* | | | |

☐ Individual capacity ☐ Official capacity

Defendant No. 3

Name ______________________

Job or Title *(if known)* ______________________

Address ______________________

______________________ *City* ______ *State* ______ *Zip Code*

County ______________________

Telephone Number ______________________

E-Mail Address *(if known)* ______________________

☐ Individual capacity ☐ Official capacity

Defendant No. 4

Name ______________________

Job or Title *(if known)* ______________________

Address ______________________

______________________ *City* ______ *State* ______ *Zip Code*

County ______________________

Telephone Number ______________________

E-Mail Address *(if known)* ______________________

☐ Individual capacity ☐ Official capacity

## II. Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A. Are you bringing suit against *(check all that apply)*:

☐ Federal officials (a *Bivens* claim)

☑ State or local officials (a § 1983 claim)

B. Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

see attached for II. B. Basis for Jurisdiction 42 U.S.C. § 1983 Violated Rights

C. Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

Not relevant

D. Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

see attached for II. D. Basis for Jurisdiction 42 U.S.C. § 1983 Actions under Color of State or Local Law

## III. Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. Where did the events giving rise to your claim(s) occur?

see attached for III. A. Statement of Claim Location of Events

B. What date and approximate time did the events giving rise to your claim(s) occur?

see attached for III. B. Statement of Claim Date and Time of Events

C. What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

see attached for III. C. Facts Underlying Claims

## IV. Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

see attached for IV. Injuries

## V. Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

see attached for V. Relief Sought

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case. **I declare under penalty of perjury that the information contained in this document is true and correct.**

Date of signing: 05/12/2026

Signature of Plaintiff Daniel J Feldman

Printed Name of Plaintiff Daniel Feldman

### B. For Attorneys

Date of signing: ____________________

Signature of Attorney ____________________

Printed Name of Attorney ____________________

Bar Number ____________________

Name of Law Firm ____________________

Address ____________________

____________________ City ____________ State ____________ Zip Code

Telephone Number ____________________

E-mail Address ____________________

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

**DANIEL FELDMAN**

**CASE # 3:26-cv-_____-_____**

**v.**

**SREIT IVY LOUISVILLE, LLC, d/b/a THE IVY APARTMENT HOMES;**
**HIGHMARK RESIDENTIAL, LLC;**
**ASHLEY LEMONS;**
**ALFREDO CARBALLO;**
**CHRISTIAN BLAKE HEATH;**
**JARMEL "MEL" HOPSON;**
**ANDREW CHAMBERLAIN;**
**JASON WHITEHOUSE;**
**MARY BETH WOODARD;**
**JOHN R. BENZ;**
**MICHELLE RAWN;**
**RAWN LAW FIRM, PLLC;**
**LOUISVILLE METRO GOVERNMENT;**
**SGT. PERRY;**
**CAPT. T. CLARKE;**
**OFFICER ANTHONY PADGETT;**
**CHASE MEDVED;**
**GRACE WALSH;**
**LINDA STEINHOFF-HOLMES;**
**JAYSON FREW;**
**DOES 1–10,**
**Defendants.**

**ATTACHMENT TO FELDMAN v. SREIT IVY LOUISVILLE et al. NON-PRISONER-1983 COMPLAINT**

**ATTACHMENT A – DEFENDANT LIST**

1. SREIT IVY LOUISVILLE, LLC, d/b/a THE IVY APARTMENT HOMES;
2. HIGHMARK RESIDENTIAL, LLC;
3. ASHLEY LEMONS;
4. ALFREDO CARBALLO;
5. CHRISTIAN BLAKE HEATH;
6. JARMEL “MEL” HOPSON;
7. ANDREW CHAMBERLAIN;
8. JASON WHITEHOUSE;
9. MARY BETH WOODARD;
10. JOHN R. BENZ;
11. MICHELLE RAWN;
12. RAWN LAW FIRM, PLLC;
13. LOUISVILLE METRO GOVERNMENT;
14. SGT. PERRY;
15. CAPT. T. CLARKE;
16. OFFICER ANTHONY PADGETT;
17. CHASE MEDVED;
18. GRACE WALSH;
19. LINDA STEINHOFF-HOLMES;
20. JAYSON FREW;

21.-30. DOES 1–10

**ATTACHMENT B - I.B. THE DEFENDANTS**

**1. SREIT IVY LOUISVILLE, LLC, d/b/a THE IVY APARTMENT HOMES**
Capacity: Entity defendant
Address: 3300 Altabrook Dr, Louisville, KY 40245
Phone: (502) 907-1738
Email:

**2. HIGHMARK RESIDENTIAL, LLC**
Capacity: Entity defendant
Address: 5080 Spectrum Drive, Suite 1000E, Addison, TX 75001
Phone: (214) 561-1200
Email: Info@HighmarkRes.com

**3. ASHLEY LEMONS**
Capacity: Individual capacity
Address: 3300 Altabrook Dr, Louisville, KY 40245
Phone: (502) 907-1738
Email:

**4. ALFREDO CARBALLO**
Capacity: Individual capacity
Address: 3300 Altabrook Dr, Louisville, KY 40245
Phone: (502) 907-1738
Email:

**5. CHRISTIAN BLAKE HEATH**
Capacity: Individual capacity
Address: 3300 Altabrook Dr, Louisville, KY 40245
Phone: (502) 907-1738
Email: TheIvyACD@highmarkres.com

**6. JARMEL "MEL" HOPSON**
Capacity: Individual capacity
Address: 3300 Altabrook Dr, Louisville, KY 40245
Phone: (502) 907-1738
Email:

**7. ANDREW CHAMBERLAIN**
Capacity: Individual capacity
Address: 3300 Altabrook Dr, Louisville, KY 40245
Phone: (502) 907-1738
Email:

**8. JASON WHITEHOUSE**
Capacity: Individual capacity
Address: 5080 Spectrum Drive, Suite 1000E, Addison, TX 75001
Phone:
Email: jwhitehouse@highmarkres.com

**9. MARY BETH WOODARD**
Capacity: Individual capacity
Address: 5080 Spectrum Drive, Suite 1000E, Addison, TX 75001
Phone: (214) 561-1200
Email: mwoodard@highmarkres.com

**10. JOHN R. BENZ**
Capacity: Individual capacity
Address: Rawn Law Firm, PLLC, 10000 Shelbyville Rd, Suite 200, Louisville, KY 40223
Phone: (502) 416-0150
Email: john@rawnlawfirm.com

**11. MICHELLE RAWN**
Capacity: Individual capacity
Address: Rawn Law Firm, PLLC, 10000 Shelbyville Rd, Suite 200, Louisville, KY 40223
Phone: (502) 416-0150
Email: michelle@rawnlawfirm.com

**12. RAWN LAW FIRM, PLLC**
Capacity: Entity defendant
Address: 10000 Shelbyville Rd, Suite 200, Louisville, KY 40223
Phone: (502) 416-0150
Email: info@rawnlawfirm.com

**13. LOUISVILLE METRO GOVERNMENT**
Capacity: Entity defendant
Address: Metro Hall, 527 W. Jefferson Street, Louisville, KY 40202
Phone: (502) 574-2003
Email:

**14. SGT. PERRY**
Capacity: Individual capacity and official capacity
Address: Jefferson County Sheriff's Office, 515 W. Market St., Suite 110, Louisville, KY 40202-3388
Phone: (502) 574-5400
Email: sperry@jcsoky.org

**15. CAPT. T. CLARKE**
Capacity: Individual capacity and official capacity
Address: Jefferson County Sheriff's Office, 515 W. Market St., Suite 110, Louisville, KY 40202-3388
Phone: (502) 574-5400
Email: tclarke@jcsoky.org

**16. OFFICER ANTHONY PADGETT**
Capacity: Individual capacity and official capacity
Address: Louisville Metro Police Department, 601 W. Chestnut Street, Louisville, KY 40203
Phone: (502) 574-7060
Email:

**17. CHASE MEDVED**
Capacity: Individual capacity and official capacity
Address: Louisville Metro Human Relations Commission, 745 W. Main Street, Suite 251, Louisville, KY 40202
Phone: (502) 574-2398
Email: chase.medved@louisvilleky.gov

**18. GRACE WALSH**
Capacity: Individual capacity and official capacity
Address: Louisville Metro Human Relations Commission, 745 W. Main Street, Suite 251, Louisville, KY 40202
Phone: (502) 574-3413
Email: Grace.Walsh@louisvilleky.gov

**19. LINDA STEINHOFF-HOLMES**
Capacity: Individual capacity
Address: 999 Lohrman Lane, Petaluma, CA 94952
Alternate Address: 1783 Hayes St, San Francisco, CA 94117
Phone: (707) 799-6902
Email: mrslsh@holmes.net

**20. JAYSON FREW**
Capacity: Individual capacity
Address: 13652 Aragon Way, Apt. 417, Louisville, KY 40245
Phone: +1 (214) 552-5859
Email: jayson.frew@gmail.com

**21. DOES 1–10**
Capacity: Unknown
Address:
Phone:
Email:

**ATTACHMENT C - SECTION II.B. BASIS FOR JURISDICTION – FEDERAL CONSTITUTIONAL AND STATUTORY RIGHTS VIOLATED**

Plaintiff alleges that Defendants violated the following federal constitutional and statutory rights:

1. **Fourteenth Amendment right to procedural due process**, including the right to notice, a meaningful opportunity to be heard, and freedom from deprivation of housing, property, and protected interests through unlawful or void state action.

2. **Fourteenth Amendment right to equal protection of the laws,** including unequal and discriminatory treatment in housing, law-enforcement response, and court-related processes.

3. **Rights secured by 42 U.S.C. § 1983**, based on deprivations of federal rights committed **under color of state law and through joint action or conspiracy with state or local actors.**

4. **Rights secured by Title II of the Americans with Disabilities Act**, **42 U.S.C. § 12132,** including **denial of reasonable accommodation**, denial of equal access to public services, denial of equal participation in court and law-enforcement-related processes, and **disability-based exclusion.**

5. **Rights secured by 42 U.S.C. § 12203,** including **retaliation, coercion, intimidation, threats, and interference arising from Plaintiff's exercise of ADA-protected rights and requests for accommodation.**

**6. Rights secured by 42 U.S.C. § 3617**, including coercion, intimidation, threats, and interference with Plaintiff's **exercise and enjoyment of fair-housing rights.**

**7. Rights arising from 28 U.S.C. § 1446(d),** to the extent **Defendants proceeded with or enforced state-court action after federal removal** and while the state court was prohibited from proceeding further unless and until remand occurred.

**8. Rights of access to the courts and to petition the government for redress of grievances under the First Amendment,** including denial of meaningful filing access, obstruction of emergency filings, refusal to permit meaningful participation, and interference with Plaintiff's ability to present claims, defenses, and requests for relief.

**9. Rights to procedural due process under the Fifth and Fourteenth Amendments,** including notice, a meaningful opportunity to be heard, and freedom from deprivation of housing, property, and protected interests through unlawful, arbitrary, or void proceedings.

**Plaintiff further alleges that the private Defendants acted jointly with, conspired with, obtained significant aid from, or willfully participated with state or local actors in the deprivation of the federal rights described above.**

**ATTACHMENT D - SECTION II.D. BASIS FOR JURISDICTION – ACTIONS UNDER COLOR OF STATE OR LOCAL LAW**

Plaintiff alleges that the following Defendants acted under color of state or local law, or jointly participated with state or local actors in the deprivation of Plaintiff's federal rights:

**1. Sgt. Perry, Capt. T. Clarke, Officer Anthony Padgett, Louisville Metro Government, Chase Medved, and Grace Walsh** acted under color of state or local law through official authority, official communications, investigative conduct, law-enforcement conduct, enforcement-related conduct, and actions affecting Plaintiff's housing, property, disability accommodations, witnesses, legal access, and ability to obtain redress.

**2. Plaintiff alleges that the private Defendants, including SREIT Ivy Louisville, LLC d/b/a The Ivy Apartment Homes, Highmark Residential, LLC, Ashley Lemons, Alfredo Carballo, Christian Blake Heath, Jarmel "Mel" Hopson, Andrew Chamberlain, Jason Whitehouse, Mary Beth Woodard, John R. Benz, Michelle Rawn, Rawn Law Firm, PLLC, Linda Steinhoff-Holmes, and Jayson Frew,** jointly participated with, conspired with, obtained significant aid from, or were willful participants in concert with state or local actors in the deprivation of Plaintiff's rights.

**3. Plaintiff alleges that these Defendants** invoked, directed, encouraged, relied upon, or benefited from official law-enforcement action, official court process, official agency conduct, or

other governmental authority in order to interfere with Plaintiff's housing, property, disability accommodations, witnesses, legal access, and ability to obtain redress.

**4. Plaintiff further alleges that this conduct was motivated in substantial part by hate-based animus and discriminatory targeting based on Plaintiff's actual or perceived disability, sexual orientation, and HIV status**, and included false accusations, false emergency reports, stigmatizing statements, and coordinated acts intended to isolate, discredit, terrify, remove, and silence Plaintiff.

**5. Plaintiff alleges that false and stigmatizing statements were communicated to law-enforcement or other officials,** that false 911 calls were made or endorsed, and that instead of correcting those false reports, state or local actors acted in concert with or gave significant aid to the discriminatory and retaliatory course of conduct.

**6. Plaintiff further alleges that certain acts challenged in this case occurred after removal to federal court** and while further state-court proceedings were prohibited unless and until remand occurred.

**7. By reason of the foregoing, Plaintiff alleges action under color of state or local law, joint action, conspiracy, willful participation in state action, discriminatory enforcement, retaliatory enforcement, and direct responsibility for deprivations of rights secured by the Constitution and laws of the United States.**

**ATTACHMENT E - SECTION III.A. LOCATION**

The events and omissions giving rise to this action occurred primarily in **Louisville, Jefferson County, Kentucky.**

**The principal location was The Ivy Apartment Homes, 3300 Altabrook Dr, Louisville, Kentucky 40245, including Plaintiff's apartment, the associated storage areas, common areas, leasing and management offices, and surrounding property.**

Related acts and omissions also occurred at or through:

**1. Jefferson County Sheriff's Office,** 515 W. Market St., Suite 110, Louisville, Kentucky 40202-3388;

**2. Louisville Metro Police Department,** 601 W. Chestnut Street, Louisville, Kentucky 40203;

**3. Louisville Metro Government / Metro Hall,** 527 W. Jefferson Street, Louisville, Kentucky 40202;

**4. Louisville Metro Human Relations Commission,** 745 W. Main Street, Suite 251, Louisville, Kentucky 40202;

**5. Rawn Law Firm, PLLC,** 10000 Shelbyville Rd., Suite 200, Louisville, Kentucky 40223;

**6. Highmark Residential, LLC,** 5080 Spectrum Drive, Suite 1000E, Addison, Texas 75001, to the extent of management, direction, supervision, communications, approval, policy, or participation affecting the events in Kentucky;

**7. The residence and property associated with Linda Steinhoff-Holmes in California**, to the extent prior slander, retaliatory conduct, coordination, republication, or interference originating there was carried into or used in Kentucky.

**8. Montevideo, Uruguay, including Hospital de Clínicas,** where Plaintiff was physically located during part of the relevant period, including during court proceedings in which Plaintiff alleges he was mocked, ridiculed, denied meaningful participation, or otherwise prejudiced while outside the United States and without housing to return to;

**Plaintiff has been outside the United States since approximately December 2024 and alleges that he has remained without a fixed residence or home to return to as a result of Defendants' actions. Plaintiff's mailing address is for service purposes only and is not a residence: 6009 W. Parker Rd., Suite 149-1055, Plano, Texas 75093.** Plaintiff alleges that although certain related communications, coordination, or background conduct occurred outside Kentucky, the principal injury, housing loss, property loss, discriminatory treatment, retaliatory acts, false reports, and state or local enforcement actions were centered in **Jefferson County, Kentucky.**

**ATTACHMENT F - SECTION III.B. DATE AND APPROXIMATE TIME OF EVENTS**

**The events and omissions giving rise to this action occurred over a continuing period, including but not limited to the following dates and approximate times:**

1. By no later than **2017**, Plaintiff alleges that Linda Steinhoff-Holmes had already begun a campaign of slander, false accusations, and discriminatory targeting in California, including false statements to law enforcement, housing actors, medical professionals, and others.

2. On or about **December 6, 2019**, Linda Steinhoff-Holmes caused a 3-day notice to quit to be served in California accusing Plaintiff of violent conduct and threats.

3. During **2020**, Plaintiff prevailed against Linda Steinhoff-Holmes in the California unlawful detainer matter, but Plaintiff alleges that the slander did not stop and instead continued to circulate to third parties, including medical providers and others.

4. On or about **December 2020**, Plaintiff entered into his tenancy at The Ivy Apartment Homes in Louisville, Kentucky.

5. Beginning in or about **2021 or 2022**, Plaintiff alleges that SREIT Ivy Louisville, LLC d/b/a The Ivy Apartment Homes, Highmark Residential, LLC, Ashley Lemons, Alfredo Carballo, Christian Blake Heath, Jason Whitehouse, and Mary Beth Woodard began or joined a sustained campaign to remove Plaintiff through repeated false accusations, non-lease-violation complaints, discriminatory treatment, retaliatory conduct, and interference with housing rights.

6. During that same general period, Plaintiff alleges that Ivy management and staff were aware that Plaintiff was HIV positive, aware that Plaintiff had difficulty obtaining HIV medication, aware of Plaintiff's disability-related and medical vulnerabilities, and aware of Plaintiff's prior litigation involving Linda Steinhoff-Holmes.

7. During that same general period, Plaintiff alleges that Ivy management and staff used language and themes echoing the same slander and stigma previously used by Linda Steinhoff-Holmes in California.

8. On **June 14, 2024**, Plaintiff underwent retinal surgery for a detached retina caused during an armed attack as Plaintiff was leaving his residence.

9. On **August 12, 2024**, Plaintiff submitted a formal complaint about persistent dog barking to Alfredo Carballo, and Plaintiff alleges that Alfredo refused to take meaningful action.

10. On **August 16, 2024**, Plaintiff was informed that his retina had detached again and that urgent surgery was necessary to prevent permanent blindness.

11. On **August 23, 2024**, Plaintiff's second retinal surgery was scheduled, but Plaintiff alleges that because of the pressure and demands of the California case and the surrounding harassment, he canceled that surgery to preserve his litigation position.

12. Between **August 2024** and **October 2024**, Plaintiff alleges that Ivy personnel continued to harass him during the eye-surgery recovery period despite knowing he needed strict rest, limited movement, limited stress, and uninterrupted healing conditions, and that this harassment contributed to permanent vision loss.

13. On **October 5, 2024**, Plaintiff alleges that Christian Blake Heath falsely accused him of harassment after Plaintiff tried to address the dog-noise issue respectfully.

14. On **November 27, 2024**, Plaintiff formally demanded reimbursement of two months' rent because of loss of quiet enjoyment, medical harm, and emotional distress, and Plaintiff alleges that Ivy did not respond.

15. Beginning in or about **December 2024**, Plaintiff alleges that he was outside the United States, homeless, and without a residence to return to because of Defendants' conduct, and that he has remained outside the United States for substantial periods since then.

16. In **early 2025**, Plaintiff alleges that Andrew Chamberlain, then a maintenance employee or maintenance lead at Ivy, and Jayson Frew became involved in the events leading to Plaintiff's removal, unlawful entries, property interference, and slander.

17. In **early 2025**, Plaintiff alleges that Jayson Frew unlawfully entered Plaintiff's apartment and worked in concert with Andrew Chamberlain and others associated with Ivy.

18. Before the eviction matter was fully carried out, and before the sheriff-assisted eviction, Plaintiff alleges that he sought restraining-order and emergency anti-harassment relief, and that the district court refused or failed to hear or grant meaningful relief.

19. On or about **March 18, 2025**, **March 22, 2025**, and **March 28, 2025**, Plaintiff alleges that he attempted to pay rent or obtain payment instructions, but landlord-side Defendants blocked, ignored, or refused those efforts.

20. On or about **March 31, 2025**, Plaintiff began filing emergency state-court applications and sworn requests for temporary restraining and related relief in Jefferson County, Kentucky.

21. After the eviction case was filed, and continuing through **April and May 2025**, Plaintiff and his mother repeatedly filed or delivered documents seeking emergency relief, anti-harassment relief, access relief, and related court intervention, and Plaintiff alleges that the court failed or refused to provide meaningful relief.

22. On or about **April 21, 2025**, Plaintiff caused filings, notices, or service materials to be transmitted to or served on John R. Benz, Michelle Rawn, Jason Whitehouse, Mary Beth Woodard, and Jayson Frew.

23. On **May 2, 2025**, Jo Anne Feldman submitted a sworn affidavit regarding court delivery, ADA barriers, and filing obstacles.

24. On or about **May 12, 2025**, Plaintiff removed the related eviction matter to federal court.

25. On or about **May 13, 2025**, state-court proceedings nevertheless continued. Plaintiff alleges that Judge Lisa Langford proceeded despite removal, despite notice, and despite arguments that the state court could proceed no further unless and until remand occurred.

26. On **May 13, 2025**, Plaintiff alleges that John R. Benz, Christian Blake Heath, Michelle Rawn, and other landlord-side participants made false statements to the court; that Plaintiff appeared from a hospital bed; that Plaintiff was physically located at Hospital de

Clínicas in Montevideo, Uruguay; that his participation was mocked, ridiculed, restricted, or cut off; and that the hearing was conducted in a retaliatory and prejudicial manner.

27. Between **May 13, 2025** and **May 27, 2025**, Plaintiff posted federal notices and no-trespass notices on his doors warning that the eviction order was void.

28. During that same period, Plaintiff alleges that these notices were emailed to Sgt. Perry, Capt. T. Clarke, and others, delivered in person by Plaintiff's mother, and repeatedly torn down, ignored, or treated as invalid.

29. During that same period, Plaintiff's mother went to the offices of Capt. T. Clarke to deliver the federal notices and warnings, and Plaintiff alleges that Capt. T. Clarke refused to take them or acknowledge them.

30. On **May 20, 2025**, at approximately **10:09 a.m.**, a false or misleading emergency report was made concerning alleged break-in or criminal conduct associated with Plaintiff, his family, or his property.

31. On **May 21, 2025**, at approximately **10:18 a.m.**, Andrew Chamberlain made or initiated a second emergency report that escalated the situation and contributed to police intervention.

32. On or about **May 21, 2025**, Plaintiff alleges that Ashley Lemons, Alfredo Carballo, Christian Blake Heath, Andrew Chamberlain, Officer Anthony Padgett, and others were present or involved while false and stigmatizing accusations were repeated about

Plaintiff and his mother, including accusations tied to HIV, sexual assault, and dangerousness.

33. On or about **May 21, 2025**, Plaintiff alleges that Grace Walsh and Chase Medved of HRC, and John R. Benz, were involved by phone, video, or contemporaneous communications while the discriminatory and retaliatory conduct was unfolding at the property.

34. On or about **May 21, 2025**, Plaintiff alleges that Officer Anthony Padgett failed to treat the event as a false 911 situation, participated in private discussions with the reporting parties, and acted in concert with or gave aid to the discriminatory and retaliatory course of conduct.

35. On **May 21, 2025**, Plaintiff retained or arranged for off-duty LMPD officers through John Aubrey and Metro Blue Line and notified Ivy and law enforcement of their presence.

36. On or about **May 21, 2025**, Plaintiff alleges that landlord-side actors then used or caused another false armed-threat narrative to be used against him and his representatives.

37. On or before **May 27, 2025**, Plaintiff alleges that a self-help eviction was already underway, including prior entry, lock interference, property disturbance, destruction, and unsupervised handling of Plaintiff's belongings.

38. On or about **May 27, 2025**, while the sheriff-assisted eviction was being carried out, Plaintiff and his mother alerted Sgt. Perry and others that a self-help eviction had already occurred and that the eviction order being enforced was invalid, but Plaintiff alleges that Sgt. Perry refused to act.

39. On the morning of **May 27, 2025**, Plaintiff received a text from Sgt. Perry with the void **May 13, 2025** order.

40. On or about **May 27, 2025**, Plaintiff alleges that his representatives were trespassed or excluded, that the sheriff's office did not preserve a meaningful body-camera record, that Plaintiff's remote supervision feed was cut off, and that the apartment was cleared without lawful supervision.

41. On or about **May 27, 2025**, Plaintiff was rendered homeless and alleges that the eviction, exclusion, seizure, destruction, or loss of property were carried out by or with the participation of Ivy personnel, sheriff personnel, law-enforcement personnel, HRC-connected participants, and other Defendants acting in concert.

42. On **July 17, 2025**, Plaintiff sent urgent HRC/HUD-related communications to Grace Walsh and Chase Medved concerning false 911 calls, missing body-camera footage, obstruction, disability-related access, and requests for real-time communication.

43. On **July 17, 2025**, Grace Walsh responded that HRC communications were best conducted over email, that the use of AI could be interpreted as lack of cooperation, and that rebuttal materials were required.

44. On **July 17, 2025**, Chase Medved requested further evidence, a disability verification form, and confirmation of Plaintiff's mailing address.

45. On **July 18, 2025**, Grace Walsh stated that she would review uploaded materials and call Plaintiff the following week.

46. During **July 2025** and thereafter, Plaintiff alleges that he made public-records and related requests for HRC materials, body-camera materials, dispatch materials, and internal records, and that those requests were denied, ignored, or not meaningfully fulfilled by Louisville Metro Government, HRC, and the Jefferson County Sheriff's Office.

47. In or about **September 2025**, Plaintiff alleges that landlord-side Defendants, including John R. Benz and related parties, knowingly furnished false debt or rent-related information to Plaintiff's credit after Plaintiff had already disputed the claimed debt and presented offsetting loss information.

48. Plaintiff alleges continuing harm after **May 27, 2025**, including homelessness, destruction or loss of possessions, interference with medical care, litigation prejudice, continuing credit and debt harm, and ongoing retaliatory, discriminatory, and hate-based effects.

49. Plaintiff uses a Plano, Texas mailing address for service purposes only and not as a residence.

**ATTACHMENT G - SECTION III.C. FACTS UNDERLYING CLAIMS**

1. Plaintiff is a **disabled, pro se litigant** who alleges that Defendants subjected him to a **years-long pattern of slander, discrimination, retaliation, harassment, false reporting, unlawful exclusion, deprivation of housing, deprivation of property, interference with medical care, and denial of meaningful court access**.
2. Plaintiff alleges that the campaign began in California, where **Linda Steinhoff-Holmes falsely portrayed Plaintiff as violent, dangerous, mentally unstable, and an elder abuser**, and made or caused **false statements to law enforcement, housing actors, medical professionals, and others**.
3. Plaintiff alleges that these false accusations were used to support an unlawful-detainer effort in California, but that **Linda Steinhoff-Holmes ultimately lost that eviction case**.
4. Plaintiff further alleges that despite that result, **the slander did not stop** and instead continued to circulate to third parties, including **medical providers, law enforcement, and others**, causing **long-term reputational, medical, and legal harm**.
5. Plaintiff alleges that the **California-origin slander later traveled across jurisdictions** and was **reused, repeated, or echoed in Kentucky**.
6. On or about **December 2020**, Plaintiff entered into his tenancy at The Ivy Apartment Homes in Louisville, Kentucky **in good faith and without any legitimate lease-based ground for eviction**.
7. Plaintiff alleges that after he moved to The Ivy, there were **initially no legitimate lease-based grounds to remove him**, but that Defendants thereafter **began searching for pretexts to force him out**.

8. Plaintiff alleges that by **2021 or 2022**, **SREIT Ivy Louisville, LLC d/b/a The Ivy Apartment Homes, Highmark Residential, LLC, Alfredo Carballo, Mary Beth Woodard, and other Ivy staff since terminated** began or joined a **sustained campaign to target him** through **repeated false accusations, complaints about conduct that was not a lease violation, harassment, retaliatory actions, and interference with his housing rights**.
9. Plaintiff alleges that Defendants objected to or threatened him over matters including **cleaning the kitchen, using the word "Karen," making a Facebook friend request, and other conduct that did not violate the lease**.
10. Plaintiff alleges that during this period Defendants were aware that Plaintiff was **HIV positive**, aware that he had **difficulty obtaining HIV medication**, aware that his medication had been **lost or mishandled in the mailroom**, and aware of Plaintiff's **disability-related and medical vulnerabilities**.
11. Plaintiff alleges that Defendants' knowledge of his **HIV status and medical vulnerability** was **used against him as part of the discriminatory and hate-based pattern**.
12. Plaintiff alleges that during this same period he and **the Ivy management discussed the California case involving Linda Steinhoff-Holmes** and Plaintiff explained that there was **no legitimate basis for trying to get rid of him**.
13. Plaintiff alleges that Ivy management and staff later **denied knowing anything about the Linda Steinhoff-Holmes case despite prior written communications with Plaintiff about it**.

14. Plaintiff alleges that the **language used by Ivy personnel and their agents echoed the same slander and stigma previously used by Linda Steinhoff-Holmes in California**, including **allegations of dangerousness, violence, and sexual misconduct**.

15. Plaintiff alleges that Defendants **repeatedly attempted to get him out of the apartment through false accusations and escalating pressure over a period of years**, culminating in the **final eviction sequence in 2025**.

16. On **June 14, 2024**, Plaintiff underwent **retinal surgery for a detached retina caused during an armed attack** as Plaintiff was leaving his residence when leasing from **Linda Steinhoff-Holmes**.

17. On **August 16, 2024**, Plaintiff was informed that his retina had **detached again** and that **urgent surgery was necessary to prevent permanent blindness**.

18. On **August 23, 2024**, Plaintiff's second retinal surgery was scheduled, but Plaintiff alleges that because of the **pressure and demands of the California case**, he **canceled that surgery to preserve his litigation position**.

19. Plaintiff alleges that during his **eye-surgery recovery period**, **Ivy personnel harassed him despite knowing that he needed strict medical recovery conditions, limited movement, limited stress, and uninterrupted healing conditions**, and that this harassment **contributed to permanent eye damage and loss of vision**.

20. Plaintiff alleges that **Christian Blake Heath, Alfredo Carballo, and other Ivy personnel** participated in or contributed to this **period of harassment**.

21. Plaintiff alleges that the harassment during his recovery **caused him to lose the chance to obtain timely second surgery and contributed to permanent visual impairment**.

22. In **early 2025**, Plaintiff alleges that **Andrew Chamberlain**, then associated with Ivy maintenance led by **Jarmel Hopson**, and **Jayson Frew** became involved in the events leading to Plaintiff's **removal, unlawful entries, property interference, and renewed slander**.

23. Plaintiff alleges that **Jayson Frew unlawfully entered Plaintiff's apartment**, worked in concert with **Andrew Chamberlain and others associated with Ivy**, and participated in conduct involving **property interference, surveillance interference, or slander**.

24. Plaintiff alleges that **Andrew Chamberlain spread slander about Plaintiff at the property** and participated in **false-reporting and maintenance-side coordination that preceded the eviction**.

25. Plaintiff alleges that by **March 2025**, Defendants **blocked, ignored, or interfered with Plaintiff's attempts to pay rent**, **shut down his online rent-payment access**, **refused to provide valid payment instructions**, **refused to accept rent**, and then used the resulting **manufactured nonpayment** as a basis for eviction and later debt reporting.

26. Plaintiff alleges that **Rawn Law Firm**, PLLC, acting through John R. Benz and Michelle Rawn, **refused repeated requests to provide a reasonable lawful means to pay the rent** they later claimed was owed, and **later made false statements** or **caused false statements** to be made that Plaintiff had been provided such means when he had not.

27. Plaintiff alleges that Defendants also **blocked or refused Plaintiff's attempts to move out on fair terms**, in order to **trap him in further rent exposure and later claim additional charges**.

28. Before the eviction matter was fully carried out, Plaintiff sought **restraining-order relief, emergency relief, anti-harassment relief, disability-related relief, medication-access relief, and rent-payment relief**, and Plaintiff alleges that the **district court refused or failed to hear ANY of his requests or grant meaningful relief**.

29. Plaintiff alleges that before the eviction matter was fully carried out, **his mother repeatedly filed or delivered documents to the court and to law-enforcement offices warning that the process was unlawful and retaliatory**.

30. Plaintiff alleges that **Judge Sarah Clay refused hearings, refused to allow meaningful consideration of TRO and ADA-related requests, refused to allow Plaintiff's evidence to be meaningfully reviewed, and refused motions for clarification or reconsideration**.

31. On or about **March 31, 2025**, Plaintiff began filing **emergency state-court applications and sworn requests for temporary restraining and related relief** in Jefferson County, Kentucky.

32. Plaintiff alleges that before and after the eviction matter was filed, he and his mother **repeatedly filed or delivered emergency documents seeking anti-harassment relief, access relief, medication relief, and related court intervention**, and that these filings were **ignored, rejected, mishandled, or denied**.

33. On or about **April 21, 2025**, Plaintiff caused **notices, filings, or service materials** to be transmitted to or served on **John R. Benz, Michelle Rawn, Jason Whitehouse, Mary Beth Woodard, and Jayson Frew**.

34. On **May 2, 2025**, **Jo Anne Feldman submitted a sworn affidavit regarding court delivery, filing barriers, and ADA-related obstacles**.

35. On or about **May 12, 2025**, Plaintiff **removed the related eviction matter to federal court**.

36. On or about **May 13, 2025**, state-court proceedings nevertheless continued. Plaintiff alleges that **Judge Lisa Langford proceeded despite removal, despite notice, and despite arguments that the state court could proceed no further unless and until remand occurred**.

37. Plaintiff alleges that during the **May 13, 2025 hearing**, **John R. Benz, Christian Blake Heath, Michelle Rawn, and other landlord-side participants made false statements to the court**; that Plaintiff **appeared from a hospital bed**; that Plaintiff was **physically located at Hospital de Clínicas in Montevideo, Uruguay**; that he was **mocked, ridiculed, restricted, or cut off**; that the hearing was conducted in a **retaliatory and prejudicial manner**; and that **Judge Langford and John Benz engaged in meaningful ex parte communications before the hearing, laughing out loud and agreeing to make Plaintiff wait to be heard last after all other cases despite Plaintiff appearing in a hospital bed on IV with doctors and nurses attending him**.

38. Plaintiff alleges that **Judge Lisa Langford stated in substance that she knew she was outside of jurisdiction but would proceed anyway**.

39. Plaintiff alleges that **no valid eviction order signed by Judge Lisa Langford was ever served on him before the sheriff-assisted eviction was carried out.**

40. Plaintiff alleges that **he did not receive any mailed copy of Judge Langford's order until July 2025, approximately six weeks after the eviction had already occurred**, when the

envelope finally arrived by mail, and therefore the order was never served on him before the eviction was executed.

41. Following removal, Plaintiff posted **federal notices and no-trespass notices on his apartment doors warning that the eviction order was void**.

42. Plaintiff alleges that these notices were **repeatedly torn down, ignored, or treated as invalid by Ivy personnel and law-enforcement personnel**.

43. Plaintiff alleges that his mother **personally went to the offices of Capt. T. Clarke to deliver the federal notices and warnings** and that **Capt. T. Clarke refused to take them or acknowledge them**.

44. On **May 20, 2025**, at approximately **10:09 a.m.**, a **false or misleading emergency report** was made concerning alleged break-in or criminal conduct associated with Plaintiff, his family, or his property.

45. Plaintiff alleges that **Alfredo Carballo and other landlord-side actors were responsible for or involved in that false report**.

46. On **May 21, 2025**, at approximately **10:18 a.m.**, **Andrew Chamberlain made or initiated a second emergency report** that escalated the situation and contributed to **police intervention**.

47. Plaintiff alleges that on or about **May 21, 2025**, **Ashley Lemons, Alfredo Carballo, Christian Blake Heath, Andrew Chamberlain, Officer Anthony Padgett, and others** were present or involved while **false and stigmatizing accusations were repeated about Plaintiff and his mother** on body-cam.

48. Plaintiff alleges that these accusations on body-cam included **false statements tied to HIV, sexual assault, dangerousness, and criminality**, including claims that **Plaintiff raped men to give them HIV while living in his apartment**.

49. Plaintiff alleges that these false accusations were part of a **hate-based pattern targeting Plaintiff for his actual or perceived disability, HIV status, sexual orientation, and related protected characteristics**.

50. Plaintiff alleges that **Grace Walsh and Chase Medved of HRC, and John R. Benz, were involved by phone, video, or contemporaneous communications** while the **discriminatory and retaliatory conduct was unfolding at the property**, also on body-cam and admitted to by **Grace Walsh.**

51. Plaintiff alleges that **Officer Anthony Padgett failed to treat the events as false 911 situations**, participated in **private discussions with the reporting parties**, and **acted in concert with or gave aid to the discriminatory and retaliatory course of conduct**.

52. Plaintiff alleges that **Officer Anthony Padgett turned off or failed to preserve his body camera during private discussions with those who made the false reports**.

53. Plaintiff alleges that the **sheriff's office did not preserve any meaningful body-camera record during the sheriff-assisted eviction** despite the **highly disputed and retaliatory nature of the events**, especially occurring after a self-help eviction.

54. On **May 21, 2025**, Plaintiff **retained or arranged for off-duty LMPD officers through John Aubrey and Metro Blue Line** and notified Ivy and law enforcement of their presence.

55. Plaintiff alleges that landlord-side actors then **used or caused another false armed-threat narrative to be used against him and his representatives** despite knowing the individuals in question were **legitimate officers or authorized representatives**.

56. Before the sheriff-assisted eviction was carried out, Plaintiff alleges that a **self-help eviction was already underway**, including **prior entry, lock interference, property disturbance, destruction, and unsupervised handling of Plaintiff's belongings**.

57. On or about **May 27, 2025**, while the sheriff-assisted eviction was being carried out, Plaintiff and his mother **alerted Sgt. Perry and others that a self-help eviction had already occurred and that the eviction order being enforced was invalid**, but Plaintiff alleges that **Sgt. Perry refused to halt the eviction**.

58. On the morning of **May 27, 2025**, Plaintiff received a **text from Sgt. Perry with the May 13, 2025 order**, and Plaintiff alleges this was **the first notice he received of any such order**.

59. Plaintiff alleges that on **May 27, 2025**, his representatives were **trespassed or excluded, including ADA-authorized representatives**, so that **no one could lawfully supervise the handling of his apartment and property**.

60. Plaintiff alleges that while he attempted to supervise remotely, **his video feed was cut off and his apartment was cleared without lawful supervision**.

61. Plaintiff alleges that on or about **May 27, 2025**, the **eviction, exclusion, seizure, destruction, or loss of property** were carried out by or with the participation of **Ivy personnel, sheriff personnel, law-enforcement personnel, HRC-connected participants, and other Defendants acting in concert**.

62. Plaintiff alleges that **all of his belongings, legal papers, medical papers, electronics, records, and property accumulated over a lifetime were taken, destroyed, or lost through these actions**.

63. Plaintiff alleges that these acts **directly interfered with his California case against Linda Steinhoff-Holmes**, including his ability to pursue **wrongful-eviction, defamation, and wrongful-death-related claims** arising there.

64. On **May 23, 2025**, Plaintiff filed in the **United States District Court for the District of Columbia** seeking **emergency relief, a temporary restraining order, a protective order, and a stay**.

65. After **Judge Langford had already ruled** and after the eviction had already been carried out, the **United States District Court for the Western District of Kentucky sent the matter back to the Jefferson District Court**, thereby returning it to the same court over which Judge Langford had presided, **without hearing or deciding the merits of Plaintiff's emergency claims, removal arguments, civil-rights claims, ADA claims, or the reasons Plaintiff contended federal jurisdiction was required**.

66. Plaintiff alleges that the **Western District of Kentucky failed to provide meaningful review on the merits of his emergency claims**, failed to protect him from the unlawful eviction, and **denied him due process**.

67. After the matter was sent back, Plaintiff sought further federal relief in the **District of Columbia federal court**, and Plaintiff alleges that those filings were **ignored, blocked, transferred, or denied without meaningful merits review**.

68. Plaintiff further alleges that he sought relief from the **Supreme Court of the United States**, and that those filings likewise **did not result in meaningful review or protection from the unlawful eviction and related deprivations**.

69. Plaintiff alleges that across the **Jefferson District Court, Jefferson Circuit Court, Western District of Kentucky, District of Columbia federal court, and Supreme Court process**, he was **repeatedly denied meaningful consideration of his emergency claims, denied meaningful access to court, denied protection from unlawful enforcement, and denied due process**.

70. Plaintiff alleges that in the **Western District of Kentucky** he was **not timely served with the TRO denial, remand-related orders, or eviction writ**, and that he was instead **told such orders had been mailed while he remained homeless, disabled, and outside the country**.

71. Plaintiff alleges that he was **told to pay the filing fee in order to have his in forma pauperis request considered**, and that **no meaningful timely merits review was provided before the eviction was carried out**.

72. On **July 17, 2025**, Plaintiff sent **urgent HRC/HUD-related communications to Grace Walsh and Chase Medved** concerning **false 911 calls, missing body-camera footage, obstruction, disability-related access, and requests for real-time communication**.

73. On **July 17, 2025**, **Grace Walsh responded that HRC communications were best conducted over email, that use of AI could be interpreted as lack of cooperation, and that rebuttal materials were required**. She was unable to provide any written proof of these HRC policies despite multiple requests.

74. On **July 17, 2025**, **Chase Medved requested further evidence, a disability verification form, and confirmation of Plaintiff's mailing address**.

75. Plaintiff alleges that **Grace Walsh and Chase Medved invoked policies, restrictions, or requirements that they then failed or refused to produce in writing when asked to do so**.

76. On **July 18, 2025**, **Grace Walsh stated that she would review uploaded materials and call Plaintiff the following week**. Instead, Plaintiff alleges that HRC later issued dismissal of the HRC claims rather than providing meaningful review of the merits.

77. Plaintiff alleges that **HRC and HUD-related actors failed to provide clear policies, failed to provide requested guidance in a timely and accessible form, and obstructed rather than facilitated equal access to the complaint process**. A formal complaint process was denied, and refused to consider any of the merits of the complaint.

78. Plaintiff alleges that he made **public-records and related records requests seeking HRC materials, body-camera materials, dispatch materials, and internal records** related to his case, and that **Louisville Metro Government and HRC denied or refused to release records that should have been available to him.**

79. Plaintiff further alleges that **the Jefferson County Sheriff's Office failed or refused to release internal records, reports, communications, or other internal documents related to his case,** including records relevant to the eviction, notice, enforcement decisions, and handling of his warnings that the eviction was invalid.

80. In or about **September 2025**, Plaintiff alleges that landlord-side Defendants, including **John R. Benz and related parties, knowingly furnished false debt or rent-related**

**information to Plaintiff's credit** after Plaintiff had already **disputed the claimed debt and presented offsetting loss information**.

81. Plaintiff alleges that the **false credit reporting deepened the harm caused by the eviction and retaliatory scheme** and was part of the **continuing effort to discredit, isolate, and financially injure him**.

82. Plaintiff alleges that **all Defendants, whether through direct action, conspiracy, joint participation, concealment, ratification, or substantial assistance, contributed to the overall discriminatory, retaliatory, and hate-based scheme described above**.

83. Plaintiff alleges continuing harm after **May 27, 2025**, including **homelessness, destruction or loss of possessions, interference with medical care, litigation prejudice, continuing credit and debt harm, permanent eye damage with an inability to drive, and ongoing retaliatory, discriminatory, and hate-based effects**.

**ATTACHMENT H - SECTION IV. INJURIES**

1. Plaintiff has suffered **homelessness and loss of housing**, including the loss of his apartment and associated storage.
2. Plaintiff has suffered **loss, destruction, seizure, or permanent deprivation of personal property**, including legal papers, medical papers, electronics, records, furnishings, clothing, and property accumulated over a lifetime.
3. Plaintiff has suffered **permanent eye damage and severe vision loss**, including blindness or near-blindness in one eye, loss of depth perception, inability to safely drive, and lasting visual impairment.
4. Plaintiff has suffered **worsening physical health** as a result of Defendants' conduct, including interruption of necessary medical care, interference with recovery from retinal surgery, loss of opportunity for timely second retinal surgery, and aggravation of existing medical conditions.
5. Plaintiff has suffered **interference with access to HIV medication and other necessary medical treatment**, including medication instability, interruption of care, and inability to obtain consistent and timely treatment.
6. Plaintiff has suffered **pain, physical suffering, medical deterioration, and disability-related harm**, including prolonged medical instability during and after the eviction process.
7. Plaintiff has suffered **emotional distress, humiliation, fear, anxiety, grief, and mental anguish** as a result of the slander, harassment, discriminatory treatment, false accusations, false 911 calls, forced eviction, and destruction of his life circumstances.

8. Plaintiff has suffered **reputational harm** caused by repeated false accusations portraying him as violent, dangerous, criminal, sexually predatory, mentally unstable, or unfit.
9. Plaintiff has suffered **litigation prejudice and court-access injury**, including loss of legal materials, inability to timely present evidence, impairment of pending cases, and obstruction of his ability to pursue judicial relief.
10. Plaintiff has suffered **financial harm**, including loss of housing, loss of property, relocation costs, replacement costs, ongoing living instability, and other out-of-pocket expenses caused by Defendants' conduct.
11. Plaintiff has suffered **credit and debt-related harm**, including damage to his credit profile and financial standing resulting from false debt reporting and fabricated charges.
12. Plaintiff has suffered **loss of civil rights and equal access**, including denial of meaningful accommodation, denial of meaningful access to court, denial of meaningful participation in legal proceedings, and discriminatory treatment based on disability, HIV status, sexual orientation, and related protected characteristics.
13. Plaintiff required and continues to require **medical treatment, medication, recovery care, monitoring, disability accommodations, housing stabilization, and replacement of destroyed or lost records and property**.
14. Plaintiff alleges that much of the necessary treatment and stabilization **was delayed, denied, obstructed, or rendered ineffective** because of Defendants' conduct.

**ATTACHMENT I - SECTION V. RELIEF REQUESTED**

Plaintiff respectfully requests that the Court award the following relief:

1. **Compensatory damages, general damages, special damages, and consequential damages** in an amount to be proven at trial, but presently estimated at **no less than $8,500,000**, based on the combined value of Plaintiff's prior California litigation loss estimate, additional Kentucky-related losses, destruction and loss of property, homelessness, interference with medical care, permanent eye damage and vision loss, reputational injury, credit harm, litigation prejudice, emotional distress, and related economic and non-economic harm.
2. **Punitive damages** against the individual Defendants and all non-governmental Defendants against whom punitive damages are legally available, in an aggregate amount presently estimated at **no less than $10,000,000**, in amounts to be determined according to each Defendant's willful, malicious, reckless, discriminatory, retaliatory, fraudulent, and hate-based conduct, and sufficient to punish and deter such conduct.
3. **Enhanced, multiplied, or statutory damages** to the fullest extent permitted by law under any claim proven at trial, including any enhancement authorized by disability, housing, retaliation, civil-rights, or related statutes, but Plaintiff does not assume that all claims automatically carry treble damages and requests such enhancement only where legally authorized.
4. **Declaratory relief** that Defendants' acts and omissions violated Plaintiff's constitutional, civil-rights, housing, disability, anti-retaliation, and equal-access rights.

5. **Injunctive relief** as necessary to prevent further retaliation, interference, false reporting, discriminatory conduct, use of void process, destruction or concealment of evidence, continuation of false debt or credit reporting, and further interference with Plaintiff's rights.
6. **An order requiring correction, withdrawal, or removal of false debt, false credit reporting, and related adverse reporting** arising from the challenged conduct.
7. **An order requiring preservation and production of evidence**, including body-camera footage, dispatch records, communications, property records, rent-payment records, notices, electronically stored information, and all other evidence relevant to Plaintiff's claims.
8. **Prejudgment interest and post-judgment interest** as allowed by law.
9. **Costs of suit and all other recoverable litigation expenses** as allowed by law.
10. **Damages for litigation prejudice, impairment, delay, increased costs, reduced litigation value, and loss of opportunity arising from Defendants' interference with Plaintiff's California litigation**, including claims previously valued by Plaintiff at approximately **$4,000,000**. Plaintiff pleads in the alternative that, to the extent the California matter is not restored or remains unrecoverable, Defendants are liable for the resulting loss or diminution of that claim. Plaintiff does not seek double recovery and requests that any award be structured to avoid duplication with any recovery later obtained in the California matter.
11. **Such other and further relief as the Court deems just, proper, and equitable.**